**COHN LIFLAND PEARLMAN**
**HERRMANN & KNOPF LLP**
Jeffrey W. Herrmann
Audra DePaolo
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Telephone: (201) 845-9600

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>USA TECHNOLOGIES, INC., STEPHEN P. HERBERT, PRIYANKA SINGH, STEVEN D. BARNHART, JOEL BROOKS, ROBERT L. METZGER, ALBIN F. MOSCHNER, WILLIAM J. REILLY, JR., WILLIAM J. SCHOCH, WILLIAM BLAIR & COMPANY, L.L.C., CRAIG-HALLUM CAPITAL GROUP LLC, NORTHLAND SECURITIES, INC., and BARRINGTON RESEARCH ASSOCIATES, INC.,<br><br>                    Defendants. | Case No.<br><br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff the University of Puerto Rico Retirement System ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters. Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the

facts and circumstances alleged herein, including: review and analysis of United States Securities and Exchange Commission ("SEC") filings; review and analysis of press releases, analyst reports, public statements, news articles, and other publications disseminated by or concerning USA Technologies, Inc. ("USAT" or the "Company"); review and analysis of Company conference calls, press conferences, and related statements and materials; and review and analysis of other relevant documents. Plaintiff believes that substantial evidentiary support for the allegations set forth herein will emerge after a reasonable opportunity to conduct discovery.

<div align="center"><b><u>NATURE OF THE ACTION</u></b></div>

1.      This is a federal securities class action on behalf of all persons or entities, other than Defendants and their affiliates, who purchased USAT common stock pursuant to the Company's Registration Statement and Prospectus (together, the "Offering Documents") issued in connection with the Company's May 23, 2018 secondary public offering (the "SPO"), seeking to recover damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2.      USAT focuses on electronic payment technology.  The Company is best known for its ePort cashless payment technology, which is designed to address the needs of the self-serve retail market. ePort technology can be found in food and beverage vending machines, commercial or multi-housing laundry operations, amusement and arcade machines, and various other self-service kiosks or point-of-sale terminals. USAT's ePort products and services facilitate cashless payments by customers via credit, debit, or mobile payment or digital wallet services.

3.      The Company derives the majority of its revenues from its ePort technology, and more specifically from ongoing license and transaction fees. The majority of the Company's ePort Connect customers pay a monthly fee for each ePort Connect connection plus a blended transaction

rate on the transaction dollar volume processed by the Company, making connections to the ePort Connect service the most significant driver of the Company's revenues. Equipment sales and servicing account for a much smaller proportion of the Company's revenues.

4.      USAT, which has been in business since 1992, has faced substantial difficulties in the past year.

5.      On September 11, 2018, a securities class action lawsuit was filed against USAT and certain of its senior officers and directors alleging that USAT's internal controls over financial reporting were weak and deficient, and that, as a result, information put out by the Company regarding its business operations, financial health, and prospects was inaccurate and misleading.

6.      On November 13, 2018, Plaintiff the University of Puerto Rico Retirement System ("UPR Retirement System" or "Plaintiff") filed a motion to consolidate and be appointed lead plaintiff in three related securities actions then pending.  *See, e.g.*, *Gouet v. USA Technologies, Inc. et al.*, Case No. 2:18-cv-13759, ECF 15.  On December 19, 2018, after briefing on the motion for appointment of lead plaintiff, the District Court consolidated the three pending actions and appointed Pinkesh Nahar the lead plaintiff (ECF 29).

7.      Because the three constituent complaints had not asserted Securities Act claims with respect to the Company's May 23, 2018 secondary public offering, Plaintiff informed the Court on briefing the motion for lead plaintiff that the UPR Retirement System would assist Nahar and serve as a named plaintiff and proposed representative party on behalf of investors that purchased USAT common stock pursuant to the SPO.  Since Nahar did not purchase on the SPO and lacks standing to assert claims under the Securities Act related to the SPO, the UPR Retirement System's participation in the lawsuit would ensure the adequacy of representation of the class.

8.     Subsequently, the District Court extended Nahar's time to file a consolidated amended complaint in that action to no later than fourteen days after USAT files its 2018 Form 10-K (ECF 42).  These actions concern serious accounting and reporting problems requiring the Company's restatement of certain financial data, which will not be finalized until USAT files its 2018 Form 10-K

9.     USAT is not expected to file its 2018 Form 10-K until September 2019.  However, because the accounting problems were first disclosed on September 11, 2018, UPR Retirement System is filing this complaint at this time alleging the Securities Act claims to ensure compliance with the one year statute of limitations under 15 U.S.C. § 77m.  UPR Retirement System intends to ask this Court to consolidate this action with the pending consolidated action, and to jointly file, as a class representative, with Nahar, as the lead plaintiff, a consolidated amended complaint pursuant to this Court's February 28, 2019 order (ECF 42).

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

11.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and 28 U.S.C. § 1331.

12.     Venue is proper in this District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and 28 U.S.C. § 1391(b), as certain of the acts and conduct complained of herein occurred in this District.

13.     In connection with the acts, conduct, and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the United States mails, interstate telephone communications, the Internet, and the facilities of the national securities exchange.

## PARTIES

**The Plaintiff**

14.    Plaintiff purchased 2,210 shares of USAT common stock at $11.00 per share on May 29, 2018 directly pursuant to the Company's materially untrue and misleading Offering Documents issued in connection with the Company's SPO, and was damaged thereby. Plaintiff's certification attesting to its trading in USAT common stock on the SPO is annexed hereto.

**The Company**

15.    Defendant USAT provides wireless networking, cashless transactions, asset monitoring, and other value-added services in the United States and internationally. It is a Pennsylvania corporation. USAT securities trade on NASDAQ under the symbol "USAT."

**The Individual Defendants**

16.    Defendant Stephen P. Herbert ("Herbert") has served as the Company's Chief Executive Officer ("CEO") since November 30, 2011. Until January 13, 2019, he also served as the Company's Chairman.

17.    Defendant Priyanka Singh ("Singh") served as the Company's Chief Financial Officer ("CFO") from March 31, 2017 until January 7, 2019.

18.    Defendants Herbert and Singh each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf.

19.    Defendants Herbert and Singh are herein collectively referred to as the "Executive Defendants."

20.    Defendants Steven D. Barnhart ("Barnhart"), Joel Brooks ("Brooks"), Robert L. Metzger ("Metzger"), Albin F. Moschner ("Moschner"), William J. Reilly, Jr. ("Reilly"), and William J. Schoch ("Schoch") served on the Company's Board of Directors and each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf.

21.    Defendants Herbert, Singh, Barnhart, Brooks, Metzger, Moschner, Reilly, and Schoch are herein referred to as the "Individual Defendants."

**The Underwriter Defendants**

22.    Defendant William Blair & Company, L.L.C. ("William Blair") acted as sole book-running manager and underwriter for the SPO and assisted in the preparation and dissemination of USAT's SPO Offering Documents.   William Blair's headquarters are located at 150 North Riverside Plaza, Chicago, Illinois 60606.

23.    Defendant Craig-Hallum Capital Group LLC ("Craig-Hallum") acted as co-manager and underwriter for the SPO. Craig-Hallum's headquarters are located at South 9th Street, Suite 350, Minneapolis, Minnesota 55402.

24.    Defendant Northland Securities, Inc. ("Northland") acted as co-manager and underwriter for the SPO.  Northland's headquarters are located at 150 South Fifth Street, Suite 3300, Minneapolis, Minnesota 55402.

25.    Defendant Barrington Research Associates, Inc. ("Barrington") acted as co-manager and underwriter for the SPO.  Barrington's headquarters are located at 161 North Clark Street, Suite 2950, Chicago, Illinois 60601.

26.    Defendants William Blair, Craig-Hallum, Northland, and Barrington are herein collectively referred to as the "Underwriter Defendants."

27.    The Company, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as the "Defendants."

28.     Pursuant to Section 11 of the Securities Act, the Underwriter Defendants are strictly liable for the false and misleading statements in the Offering Documents, subject to affirmative defenses.

## SUBSTANTIVE ALLEGATIONS

### The Secondary Public Offering

29.     On May 9, 2018, USAT filed a Registration Statement on Form S-1 with the SEC.

30.     On May 22, 2018, USAT's Registration Statement was declared effective by the SEC. On May 23, 2018, USAT filed a Prospectus pursuant to Rule 424(b)(4).

31.     The SPO was priced at $11 per share, with 5,432,583 shares of USAT common stock to be sold by the Company and 553,187 shares of USAT common stock to be sold by certain selling shareholders.  In addition, USAT granted the underwriters an option to purchase up to 897,866 additional shares from the Company.

32.     On May 25, 2018, USAT issued a press release announcing the closing of its SPO, which generated gross proceeds of $75.7 million.  USAT sold 6,330,449 shares of its common stock, reflecting the full exercise of the underwriters' option to purchase additional shares.  An additional 553,187 shares of USAT common stock were sold by the underwriters on behalf of selling shareholders.

### The Materially False and Misleading Offering Documents

33.     The Offering Documents for USAT's SPO contained materially false and misleading statements.

34.     The Offering Documents incorporated by reference the Company's 2017 10-K, Q1 2018 10-Q, Q2 2018 10-Q, and Q3 2018 10-Q, which were materially false and misleading due to the Company's failure to recognize revenue in accordance with GAAP and their own policies,

resulting in false and misleading financial statements.  The Company itself subsequently recognized that these financial statements were materially misleading, admitting to investors that seven quarters of financial reports (including the 2017 10-K, Q1 2018 10-Q, Q2 2018 10-Q, and Q3 2018 10-Q) could no longer be relied on and would have to be restated.

35.    In the Offering Documents, the Company highlighted the importance of accurate reporting and recognition of connections to USAT's payment network, noting that "[c]onnections to our service are the most significant driver of our revenues, particularly the higher margin recurring revenues."  The Company provided information about USAT's connection base, providing that "[a]s of June 30, 2017 and March 31, 2018, we had 568,000 and 969,000 connections, respectively, to our service," and stating that the connections "represent[] a 32% and 92% increase from connections as of June 30, 2016 and March 31, 2017."

36.    In a Form 8-K filing on January 14, 2019, the Company acknowledged "premature and/or inappropriate recognition of revenues and reporting of connections."  As a result, the information provided in the Offering Documents was inaccurate.  Many other factual statements in the Offering Documents reflect what the Company has since admitted are inflated and erroneous figures, including representations about revenue amounts, revenue sources, and growth in revenue.

**The Truth Emerges**

37.    On September 11, 2018, prior to the opening of trading, USAT announced that it would not file its Annual Report on Form 10-K for the fiscal year ended June 20, 2018 by the September 13, 2018 due date.  The Company disclosed that the Audit Committee of the Company's Board of Directors, with the assistance of independent legal and forensic accounting advisors, was "conducting an internal investigation of current and prior period matters relating to certain of the Company's contractual arrangements, including the accounting treatment, financial reporting and internal controls related to such arrangements."  The Form 8-K stated, in relevant part:

**USA Technologies, Inc. to Delay Form 10-K Filing for Fiscal Year 2018**

**MALVERN, Pa., September 11, 2018** -- USA Technologies, Inc. (NASDAQ:USAT) (the "Company"), a premier digital payment, consumer engagement and logistics service provider for the self-service retail market, today announced that it will not file its Annual Report on Form 10-K for the fiscal year ended June 30, 2018 (the "Annual Report") by the September 13, 2018 due date. The Company will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission (the "SEC") to provide it with a 15 calendar day extension within which to file the Annual Report.

The Audit Committee of the Company's Board of Directors, with the assistance of independent legal and forensic accounting advisors, is in the process of conducting an internal investigation of current and prior period matters relating to certain of the Company's contractual arrangements, including the accounting treatment, financial reporting and internal controls related to such arrangements. The Audit Committee is working closely with its advisors to complete its investigation in as timely a manner as possible. The Company will not be in a position to file its Form 10-K until the Audit Committee completes its investigation and the Company and its independent auditor assess the results of that investigation.

38.     When USAT disclosed that it was unable to timely file its Form 10-K with the SEC for the fiscal year ended June 30, 2018 due to an internal investigation of some of the Company's accounting and financial reporting controls, USAT stock fell $6.10 per share, or over 39%, from its previous closing price to close at $9.20 per share on September 11, 2019.

39.     As the internal investigation proceeded, on November 13, 2018, USAT filed a notification of inability to file Form 10-Q with the SEC on Form NT 10-Q, explaining that due to the previously disclosed investigation, it would not timely file its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2018.

40.     The Company continued to struggle with these issues in 2019. On January 11, 2019, USAT announced that Singh had resigned as the Company's CFO, effective January 7, 2019. Singh's abrupt resignation came in the middle of an Audit Committee investigation into improper accounting, less than two years into her tenure as CFO.

41.     On January 14, 2019, the Company filed an 8-K reporting the principal findings of the Audit Committee's investigation.  The Company reported that the Audit Committee had substantially completed its investigation, which focused principally on certain customer transactions entered into by the Company during fiscal years 2017 and 2018. The Audit Committee found that, for certain of those transactions, the Company had prematurely recognized revenue and, in some cases, the reported number of connections associated with the transactions under review. USAT stated that the Audit Committee and its advisors proposed adjustments to previously reported revenues for certain principally related to  the  fiscal quarters occurring during the 2017 and 2018 fiscal years, with an aggregate expected reduction to previously reported revenues of up to $5.5 million.  The Company stated that in most cases, revenues that had been recognized prematurely were, or are still expected to be, recognized in subsequent quarters, including quarters subsequent to the quarters impacted by the investigative findings, which have not yet been reported.  It warned, however, that USAT has not completed its analysis of the specific adjustments to previously reported revenues identified by the investigation, and such analysis could result in further adjustments that could be material.  The Audit Committee investigation further found that certain items that had been recorded as expenses, such as the payment of marketing or servicing fees, were more appropriately treated as contra-revenue items in earlier fiscal quarters.

42.     The Audit Committee reported that USAT had a corporate culture that essentially encouraged fraudulent recognition of revenue. USAT described the Audit Committee's findings as a result of its investigation as follows:

> The principal findings of the Audit Committee were that: (i) pressure to achieve sales targets gave rise to the premature and/or inappropriate recognition of revenues and reporting of connections associated with certain of the examined transactions, typically occurring at or near the end of financial reporting periods; (ii) on multiple occasions, the Company's finance function was not timely

or fully apprised of the salient transaction terms in order to permit them to properly evaluate the accounting treatment of a given transaction; (iii) the Company's internal controls failed and/or were not adequate to ensure that there was effective communication between the sales and finance functions of the Company so as to allow proper and timely evaluation of the accounting treatment of the examined transactions; (iv) senior management did not timely or fully report certain employee complaints and concerns to the independent auditor and/or the Audit Committee; (v) senior management did not timely or thoroughly investigate or effectively remediate certain employee complaints or concerns relating to compliance and/or financial reporting matters; and (vi) the foregoing matters gave rise to substantial tonal concerns warranting remediation.

In other words, the Audit Committee had discovered that the Company's sales and/or finance employees had misrepresented transactions and ePort connections and improperly recognized revenue, and its senior management had ignored employee concerns and complaints.

43.    The January 14, 2019 8-K reported that the Audit Committee had recommended and the Board of Directors decided to implement a list of remedial measures: enhancing the Company's internal controls, particularly those relating to unusual or quarter end customer transactions and communication between the sales and finance departments, mandatory training for the sales department, claw-back of any appropriate compensation under the Company's incentive compensation plans, expanding the Company's public disclosure regarding connections, Company-wide training about compliance matters, including with respect to employee complaints and concerns and enhancement of the customer contracting process, considering appropriate employment actions relating to certain employees, enhancing the internal compliance and legal functions, and authorizing management to retain the appropriate individual or individuals, and splitting of the roles of Chairman and CEO.

44.    Despite determining that he had overseen a corporate culture with pervasive accounting fraud and ignored employee reports of improper conduct, the Board decided that

Herbert would continue to serve as CEO. The Board appointed Albin Moschner, a Company director since 2012, as the new Chairman. It also created new Chief Operating Officer and Chief Compliance Officer positions. The Board additionally directed the Nominating and Corporate Governance Committee to identify two additional independent directors to join the Board, and authorized the formation of a new Compliance Committee, to be made up independent directors, assume oversight responsibility for the Company's compliance functions and supervise the new Chief Compliance Officer.

45.     In the January 14, 2019 8-K, the Company also announced the removal or demotion of three more senior executives. USAT disclosed that its Chief Services Officer, Michael Lawlor ("Lawlor") (the executive in charge of overseeing the growth and penetration of ePort connections), was no longer a Company employee, and was instead expected to "provide consulting services to the Company for a term and compensation to be agreed upon." USAT's Senior Vice President of Marketing and Strategic Development, Maeve Duska ("Duska"), and its Senior Vice President of Operations, George Harrum ("Harrum"), were each reassigned to new roles that would report to the to-be appointed Chief Operating Officer.

46.     The impact of these demotions, and of Singh's resignation, demonstrates the extent of the Company's problems. In 2017, the Company had six named executive officers: Herbert, Singh, Leland Maxwell (the interim CFO that Singh replaced, who then became USAT's Senior Vice President of Finance), Lawlor, Duska, and Harrum. By January 14, 2019, four out of six were either gone or demoted.

47.     The January 14, 2019 8-K additionally disclosed that while the Audit Committee had substantially completed its investigation, more time would be required for it to finalize its

2018 10-K and to determine whether the restatement of previously filed financial statements would be required.

48.    On February 6, 2019, after the close of the market, the Company disclosed in a Form 8-K that its auditor, RSM, had resigned because it concluded that it could no longer rely on management representations in connection with the audit of the Company's 2017 internal control over financial reporting and consolidated financial statements. In other words, USAT's management—including Defendant Herbert—was lying to its auditor in an ongoing attempt to avoid reporting accurate financial statements to investors.

49.    In the February 6, 2019 8-K, USAT also revealed that that the Company had determined that it would restate the 2017 10-K, the 1Q 2018 10-Q, the 2Q 2018 10-Q, and the 3Q 2018 10-Q. The Company also stated that related press releases, earnings releases, management's report on the effectiveness of internal control over financial reporting as of June 30, 2017, and investor communications describing the Company's financial statements for these periods should no longer be relied upon.

50.    On this news, USAT's shares plummeted from a $6.88 closing price on February 6, 2019 to close at $3.40 per share on February 7, 2019, losing more than half their value.

51.    In March 2019, USAT received a delisting notice from the Nasdaq due to delinquent financial filings. The Nasdaq Hearings Panel granted the Company an extension through September 9, 2019 to come into compliance and avoid a delisting determination. In July 2019, the Company received notice of an additional delinquency associated with its failure to timely hold an annual meeting of shareholders.

52.    The Company has yet to regain compliance with its periodic reporting requirements.

53.    USAT has admitted that its financial statements were materially false by telling investors that seven quarters of financial reports could no longer be relied on and would have to be restated.

54.    USAT has admitted that it violated its own revenue recognition policy. According to the 2017 10-K, the Company's revenue recognition policy requires that "revenue is only recognized when persuasive evidence of an arrangement exists, delivery has occurred or services have been rendered, the price is fixed and determinable, and collection of the resulting receivable is reasonably assured." The Audit Committee's investigation revealed that Defendants prematurely recognized revenue.

55.    USAT's accounting issues during fiscal years 2017 and 2018—issues serious enough to require a restatement of the Company's previous financial statements—were ongoing at the time of the Company's May 23, 2018 SPO, but the truth about the Company's ineffective internal controls over financial reporting and failure to recognize revenue in accordance with GAAP and their own policy would not come to light until several months later.

56.    The market price for USAT common stock was artificially inflated in the SPO, and Plaintiff and members of the Class suffered damages in connection with the purchase of USAT common stock in the SPO.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased shares of the Company's common stock pursuant to the Offering Documents issued in connection with the Company's SPO (the "Class"). Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of people in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct as complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants violated the Securities Act as alleged herein;

(b)     Whether statements made by Defendants to the investing public in the Offering Documents misrepresented or omitted material facts about the financial condition, business, operations, and management of the Company;

(c)    Whether the Class members have sustained damages and, if so, the proper measure of damages.

62.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members is impracticable.  Moreover, since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation would make it nearly impossible for members of the Class to bring individual actions.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**Violation of Section 11 of the Securities Act Against All Defendants**

63.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.    This Count is asserted against all Defendants for violations of Section 11 of the Securities Act (15 U.S.C. §77k), on behalf of the Class.

65.    The Offering Documents for the SPO were inaccurate and misleading, as described in detail above.

66.    As the issuer of the registered securities, the Company is strictly liable for the material misstatements and omissions contained in the Offering Documents.

67.    The Individual Defendants each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf, and are therefore liable for the misrepresentations and omissions contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.

68. The Underwriter Defendants each served as underwriters in connection with the SPO, which was conducted pursuant to the Offering Documents. As such, each is liable for the misrepresentations and omissions contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.

69. The Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading statements to the investing public in the Offering Documents. As a result of the Defendants' wrongful conduct, the market price for USAT common stock was artificially inflated in the SPO, and Plaintiff and members of the Class suffered damages in connection with the purchase of USAT common stock in the SPO.

70. Plaintiff and members of the Class acquired USAT common stock pursuant to the Offering Documents used for the SPO, and, at the time of their purchases, were without knowledge of the wrongful conduct alleged herein. This claim has been brought within one year of the discovery of the untrue statements and omissions and within three years of the date of the offering.

71. As a result of the foregoing, Defendants are liable for violations of Section 11 of the Securities Act. The Plaintiff and members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the Defendants and each of them, jointly and severally.

## COUNT II

**Violation of Section 12(a)(2) of the Securities Act Against USAT, the Executive Defendants, and the Underwriter Defendants**

72. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     This Count is asserted against the Company, the Executive Defendants, and the Underwriter Defendants, on behalf of all persons who purchased shares of USAT common stock pursuant to the SPO, and is based on Section 12(a)(2) of the Securities Act (15 U.S.C. §77l).

74.     By means of the Offering Documents, USAT, the Executive Defendants, and the Underwriter Defendants promoted and sold USAT common stock in the SPO, and therefore are liable under Section 12(a) for the misrepresentations and omissions contained in the Offering Documents.

75.     At the time of their purchases, the Plaintiff and members of the Class did not know, nor in the exercise of due diligence could have known, of the material misstatements and omissions in the Offering Documents.

76.     The Plaintiff and other members of the Class who purchased USAT stock pursuant to the SPO sustained substantial damages as a direct and proximate result of Defendants' violations of Section 12(a)(2).

77.     Accordingly, members of the Class who hold common stock issued pursuant to the Offering Documents have the right to rescind and recover the consideration paid for their shares, or to recover rescissory or other damages to the maximum extent permitted by law, and hereby tender (to the extent tender is required) their shares. Class members who have sold their common stock seek damages to the maximum extent permitted by law.

## COUNT III

**Violation of Section 15 of the Securities Act Against USAT and the Individual Defendants**

78.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

79.     This Count is asserted against USAT and the Individual Defendants for violations of Section 15 of the Securities Act (15 U.S.C. §77o), on behalf of the Plaintiff and the other Class members who purchased USAT common stock pursuant to the SPO.

80.     As set forth in Counts I and II, USAT is liable pursuant to Sections 11 and 12(a)(2) of the Securities Act. At all relevant times, the Individual Defendants were controlling persons of USAT within the meaning of Section 15 of the Securities Act. The Individual Defendants served as executive officers and/or directors of USAT prior to and at the time of the SPO. Each of the Individual Defendants was a participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed the Registration Statement and/or having otherwise participated in the process that allowed the SPO to be completed. The Individual Defendants, by virtue of their positions as senior officers or directors of the Company, controlled the Company, as well as the content of the Offering Documents, at the time of the SPO. The Individual Defendants had the power and influence and exercised the same to cause USAT to engage in the acts described herein.

81.     The Company controlled the Individual Defendants and all of its employees.

82.     As a direct and proximate result of the Company and the Individual Defendants' wrongful conduct, the market price for USAT common stock was artificially inflated in the SPO, and Plaintiff and members of the Class suffered damages in connection with the purchase of USAT common stock pursuant to the Offering Documents.

83.     This action was brought within one year of the discovery of the untruthfulness of the statements and omissions and within three years of the SPO.

84.     As a result of the foregoing, the Company and the Individual Defendants are liable under Section 15 of the Securities Act as control persons for the violations of Sections 11 and

12(a)(2). The Company and each of the Individual Defendants is liable to Plaintiff and the other Class members for damages suffered as a result of the Securities Act violations of the persons they controlled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding rescissory damages in favor of Plaintiff and the other Class members where appropriate against all Defendants, jointly and severally, for all injuries sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including interest, as allowed by law;

D.    Awarding Plaintiff and the other members of the Class prejudgment and post judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs;

E.    Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all triable claims.

Dated: August 12, 2019

<div style="margin-left:40%">

**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**

By: *s/Jeffrey W. Herrmann*
Jeffrey W. Herrmann
Audra DePaolo
Park 80 Plaza West-One
Saddle Brook, New Jersey 07663
(201) 845-9600

Robert C. Finkel
Elissa H. Hachmeister
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for the University of Puerto Rico
Retirement System*

</div>

## PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, Samuel Nales, as Executive Director of the University of Puerto Rico Retirement System (the "UPR Retirement System"), hereby state:

1.    I am the Executive Director of the UPR Retirement System, and am duly authorized to execute this certification on its behalf.

2.    I have reviewed the Complaint, *University of Puerto Rico Retirement System v. USA Technologies, Inc., et al.*, and have authorized Wolf Popper LLP to file that complaint on the UPR Retirement System's behalf.

3.    The UPR Retirement System is willing to serve as a representative party on behalf of the Class, as defined in the Complaint, including providing testimony at deposition and trial, if necessary.

4.    The following includes all of the UPR Retirement System's transactions in USAT securities during the period May 23, 2018 through June 30, 2019.

SEE ATTACHED

5.    The UPR Retirement System did not purchase these shares at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

6.    During the three-year period preceding the date of signing this certification, the UPR Retirement System has sought to serve as a representative on behalf of a class arising under the federal securities laws, but was not appointed as a representative in the following private actions:

*Hall v. Rent-A-Center, Inc.*, 4:16-cv-00978 (E.D. Tex.).
*West Palm Beach Firefighters' Pension Fund v. SCANA Corp.*, 17-cv-03141 (D.S.C.)
*Wigginton v. Advance Auto Parts Inc.*, 18-cv-00212 (D. Del.)
*Plymouth County Ret. Sys. v. Patterson Companies, Inc.*, 18-cv-00871 (D. Minn.)
*In re USA Technologies, Inc. Securities Litigation*, 2:2018-cv-13759
*City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Ryanair Holdings PLC et al.*, 1:2018-cv-10330
*Edwards v. McDermott International, Inc.*, 4:2018-cv-04330

7.    During the three-year period preceding the date of signing this certification, the UPR Retirement System has sought to serve, and has served, as a representative on behalf of a class arising under the federal securities laws in the following private actions:

*Utesch v. Lannett Co.*, 16-cv-05932 (E.D. Pa.)
*Carvelli v. Ocwen Fin. Corp.*, 17-cv-80500 (S.D. Fla.)

8.     The UPR Retirement System will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, such as lost wages relating to the representation of the Class.

9.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9_ day of _august_____, 2019

By: _____
    Samuel Nales
    Executive Director

**USA TECHNOLOGIES, INC. (USAT)**
**LIST OF PURCHASES AND SALES**

| TRADE DATE | PURCHASE OR SALE | QUANTITY | PRICE PER SHARE | COST |
|---|---|---|---|---|
| 5/23/2018 | Purchase | 2,210 | $11.00 | $24,310 |
| 6/28/2018 | Purchase | 811 | $13.74 | $11,140 |
| 6/28/2018 | Purchase | 76 | $13.91 | $1,057 |
| 6/29/2018 | Purchase | 817 | $14.00 | $11,438 |
| 6/29/2018 | Purchase | 906 | $13.95 | $12,635 |
| 8/17/2018 | Purchase | 779 | $16.33 | $12,723 |
| 8/17/2018 | Purchase | 85 | $16.20 | $1,377 |
| 8/20/2018 | Purchase | 483 | $16.31 | $7,877 |
| 8/20/2018 | Purchase | 335 | $16.43 | $5,502 |
| 8/20/2018 | Purchase | 168 | $16.43 | $2,759 |
| 12/19/2018 | Sale | 962 | $3.86 | $3,713 |
| 12/19/2018 | Sale | 6,010 | $3.81 | $22,920 |
| 12/19/2018 | Sale | 1,394 | $3.71 | $5,178 |
| 12/20/2018 | Sale | 3,139 | $3.63 | $11,387 |
| 12/20/2018 | Sale | 2,163 | $3.50 | $7,569 |
| 12/21/2018 | Sale | 6,050 | $3.42 | $20,721 |
| 12/24/2018 | Sale | 2,765 | $3.28 | $9,070 |
| 12/26/2018 | Sale | 322 | $3.52 | $1,133 |
| 12/26/2018 | Sale | 1,427 | $3.54 | $,5048 |
| 12/26/2018 | Sale | 558 | $3.50 | $1,955 |